IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERESA D., § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| V. § | | No. 3:18-cv-2071-N-BN |
| § | | |
| § | | |
| ANDREW SAUL, Commissioner of § | | |
| Social Security, § | | |
| § | | |
| Defendant. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Teresa D. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

**Background**

Plaintiff alleges that is she disabled as a result of chronic pain syndrome, degenerative disease of the cervical spine, torn tendon of the right shoulder, osteoarthritis of the right knee, chronic migraine tension headaches, brachial neuritis, ganglion of tendon, sprain of the neck, depression, and carpal tunnel syndrome. *See* Administrative Record [Dkt. No. 13-1] ("Tr.") at 21, 287. Alleging an onset date of April 24, 2013, Plaintiff filed an application for supplemental social security income, which the Commissioner initially denied – and denied again upon reconsideration. *See id.* at 176-78, 188-89, 206. Plaintiff then requested a hearing before an administrative law

judge ("ALJ"). *See id.* at 215. That hearing was held on June 15, 2016. *See id.* at 10. At the time of the hearing, Plaintiff was 46 years old and had completed high school. *See id.* at 22. Plaintiff has not engaged in substantial gainful activity since her onset date of April 23, 2013, through December 31, 2014, the date in which she was last insured. *See id.* at 12.

The ALJ found that Plaintiff was not disabled. *See id.* 23. Although the medical evidence established that Plaintiff suffered severe impairments from chronic pain syndrome, degenerative disc disease of the cervical spine, torn tendon of the right shoulder, osteoarthritis of the right knee, and carpal tunnel syndrome, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 17. The ALJ further determined that Plaintiff had the residual functional capacity to perform

> sedentary work as defined in 20 C.F.R. 404.1567(a), subject to the following limitations. She is limited to frequent balancing, and frequent handling, reaching, and fingering with the upper extremities, bilaterally. She can occasionally climb ramps and stairs, and can occasionally stoop, kneel, and crouch. She cannot climb ladders, ropes, or scaffolds, and she cannot crawl.

*See id.* at 18. As such, ALJ found that Plaintiff was not disabled under Medical-Vocational Guidelines because given her age, education, and exertional capacity for work, she was capable of working as a call-out operator, order clerk, or patcher – jobs that exist in significant numbers in the national economy. *See id.* at 28.

Plaintiff appealed that decision to the Appeals Council, which affirmed the ALJ's decision. *See id.* at 8.

2

Plaintiff then filed this action in federal district court. *See* Dkt. No. 1. Plaintiff challenges the hearing decision on the grounds that the ALJ failed to (1) consider all of the plaintiff's vocationally significant impairments in determining residual functional capacity, (2) properly consider whether Plaintiff's condition satisfies the Commissioner's Requirements for Presumptive Disability, and (3) give due consideration to medical opinion evidence. *See* Dkt. No. 13 at 1-19.

The undersigned concludes that the hearing decision should be reversed and remanded.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552-55 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its

judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's

substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff challenges the hearing decision on the grounds that the ALJ failed to (1) consider all of the plaintiff's vocationally significant impairments in determining residual functional capacity, (2) properly consider whether Plaintiff's condition satisfies the Commissioner's Requirements for Presumptive Disability, and (3) give due consideration to medical opinion evidence. *See* Dkt. No. 13 at 1-19.

The court should reverse and remand based on the first issue.

Plaintiffs asserts that the ALJ not only "failed to consider the functional limitations resulting from" impairments in the record – such as major depressive disorder, headaches, obesity, the effects of medication and treatment, and the limited ability to move her head – but that he also "applied an improper legal standard [in] evaluat[ing] Plaintiff's severe impairments." Dkt. No. 15 at 1. She contends that the ALJ "defined an impairment as not severe if it would have 'no more than a minimal effect' on an individual's ability to work." *See id.* at 6. Such a definition, she argues, is inconsistent with United States Court of Appeals for the Fifth Circuit's standard

6

articulated in *Stone v. Heckler*, 752 F.2d 1009 (5th Cir. 1985), that an impairment can only be considered not severe "if it would not be expected to interfere with the individual's ability to work irrespective of age, education, or previous work experience." Dkt. No. 13 at 6.

Evidently conceding that the ALJ did, in fact, use the improper standard, the Commissioner asserts that standard in *Stone* is distinguishable because it addresses the circumstance when "the whole claim is denied at step two" and that, once the ALJ "proceeds past step two ... it is irrelevant" absent harm "that the Commissioner did not refer to the *Stone* standard regarding whether impairments are severe." Dkt. No. 14 at 3.

Here, the Commissioner asserts, "the ALJ did not make his disability determination at step two. Instead, after finding all the impairments that the claimant alleged to be 'severe,' the ALJ proceeded on to [sic] the remaining steps ... to consider all the claimant's medically determinable impairments – both severe and non-severe – before determining that she was not disabled and could perform a significant number of jobs in the national economy." *Id*. at 4. As such, he argues, the *Stone* error was harmless because the ALJ considered the impairments in the subsequent steps. *See id*.

As to the claim that ALJ failed to consider the additional impairments, the Commissioner argues "the ALJ considered [Plaintiff's] depression under the paragraph B criteria" in reaching his decision. *Id*. at 5. But the Commissioner distinguishes the ALJ's responsibility as to the remaining alleged impairments, noting that (1) the

7

record does not support a finding that her headaches were severe; (2) Plaintiff failed to allege that her obesity was a disabling impairment in her application; and (3) the "ALJ is not required to believe every allegation of disabling pain," as related to the assertions of her drowsiness, the impact of her medication, and the limited ability to move her head. *Id.* at 5-8.

Plaintiff rebuffs the Commissioner's assertion that *Stone* is irrelevant to the instant case, arguing that the United States Court of Appeals for the Fifth Circuit has "clarified that a failure to apply the proper legal standard at step [two] of the sequential evaluation of disability taints the disability determination process, even when the ultimate decision is made beyond the step [two] severity determination." Dkt. 15 at 2. Plaintiffs argues that the ALJ's failure to apply the *Stone* standard is a legal error by which the Plaintiff was "harmed by the ALJ's failure to properly consider all her severe impairments and assess functional limitations thereon." *Id.* at 3. As such, she argues, the case should be remanded for reconsideration. *See Id.* at 2.

In the United States Court of Appeals for the Fifth Circuit, the appropriate legal standard for determining whether a claimant's impairment is severe is *de minimus*. *See Ruby v. Astrue*, No. 3:08-CV-1012-B(BF), 2009 WL 4858060, at *7 (N.D. Tex. Dec. 14, 2009). Specifically, the court in *Stone* "construed the current regulation as setting the following standard in determining whether a claimant's impairment is severe: '[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with

8

the individual's ability to work, irrespective of age, education or work experience.'" *Stone*, 752 F.2d at 1100 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984) and citing *Davis v. Heckler*, 748 F.2d 293, 296 (5th Cir. 1984); *Martin v. Heckler*, 748 F.2d 1027, 1032 (5th Cir. 1984)); *see also Loza v. Apfel*, 219 F.3d, 391 (5th Cir. 2000) (noting that "this court's standard is based on a slight abnormality having such minimal effect as would not be expected to interfere with "ability to work, irrespective of age, education or work experience").

In making a severity determination, the ALJ must set forth the correct standard by reference to Fifth Circuit opinions or by an express statement that the Fifth Circuit's construction of the regulation has been applied. *See Grafton v. Colvin*, No. 3:15-CV-1077-M-BN, 2015 WL 9811756, at *4 (N.D. Tex. Dec. 21, 2015), *rec. adopted*, 2016 WL 193618 (N.D. Tex. Jan. 15, 2016) (citing *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986)).

"As to the issue of whether the ALJ applied the appropriate severity standard, courts are to presume that the ALJ used an incorrect standard for measuring severity at step two of the sequential evaluation process if the decision fails to refer to the *Stone* opinion by name or cite language of the same effect." *Morris v. Astrue*, No. 4:11-CV-631-Y, 2012 WL 4468185, at *4 (N.D. Tex. Sept. 4, 2012), *rec. adopted*, 2012 WL 4466144 (N.D. Tex. Sept. 27, 2012) (citing *Loza*, 219 F.3d at 393). While a case will not be remanded simply because the ALJ did not use "magic words," remand is

9

required when there is no indication that the ALJ applied the correct standard. *Id*. (citing *Hampton*, 785 F.2d at 1311).

In determining whether the ALJ applied the correct severity standard, the presumption may be rebutted by a showing that the ALJ applied the correct legal standard, regardless of the ALJ's recitation of the severity standard, or that the ALJ's application of the incorrect standard was harmless. *See Marston v. Berryhill*, No. 3:16-CV-1805-N-BN, 2017 WL 3328122, at \*3 (N.D. Tex. June 29, 2017), *rec. adopted*, 2017 WL 3316135 (N.D. Tex. Aug. 3, 2017) (citing *Taylor v. Astrue*, No. 3:10-cv-1158-O-BD, 2011 WL 4091506, at \*6 (N.D. Tex. June 27, 2011), *rec. adopted*, 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011) (applying harmless error analysis in *Stone* error cases)).

Here, the ALJ adopted the standard in 20 C.F.R. § 404.1521 and defined an impairment as not severe when "medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." Tr. at 11. This standard is nearly identical to the one in *Sanders v. Asture*, No. CIVA 307CV1827-G(BH), 2008 WL 4211146, at \*7 (N.D. Tex. Sept. 12, 2008). In *Sanders*, as in the instant case, the ALJ made no reference to the *Stone* standard but stated that an "impairment or combination of impairments is 'not severe' when medical or other evidence establish only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." *Id*. "The court in

10

*Sanders* reasoned that this language indicated that the impairment could have, "at most, a minimal effect on a claimant's ability to work." *Grafton,* 2015 WL 9811756, at \*4 (quoting *Sanders*, 2008 WL 4211146, at \*7). Because the standard set forth in *Stone* "provides no allowance for a minimal interference on a claimant's ability to work," the language in *Sanders* was not a proper recitation of the severity standard. *Id.*

> As in *Sanders*, the standard recited by the ALJ here allows for a minimal effect on the claimant's ability to work. The *Stone* severity standard does not allow for any interference with work ability — even minimal interference. *See Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805-06 (N.D. Tex. 2009); *Morris*, 2012 WL 4468185, at \*5. The ALJ therefore erred because she did not actually state the same standard mandated by *Stone*.

*Marston,* 2017 WL 3328122, at \*4.

Traditionally, this would have constitute grounds for the court to automatically remand the case on a legal error. *See, e.g.*, *Scroggins*, 598 F. Supp. 2d at 806-07; *Sanders*, 2008 WL 4211146, at \*8. But courts now adopt a trend of not automatically remanded such cases. *See, e.g.*, *Lacy v. Colvin*, No. 3:13-CV-1312-BN, 2013 WL 6476381, at \*8 (N.D. Tex. Dec. 10, 2013)*; Rivera v. Colvin*, No. 3:12-cv-1748-G-BN, 2013 WL 4623514, at \*6 (N.D. Tex. Aug. 28, 2013); *Easom v. Colvin*, No. 3:12-cv-1289-N-BN, 2013 WL 2458540, at \*4-\*6 (N.D. Tex. June 7, 2013). Instead,

> the presumption that legal error occurred based on the incorrect wording of the standard may be rebutted by a showing that the correct legal standard was actually applied by the ALJ, *see Morris*, 2012 WL 4468185, at \*9, or that the error was harmless, *see Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir.2012). Many courts have presumed that the *Stone* error is harmless where the analysis continues beyond Step 2. *See, e.g., Lederman v. Astrue*, 829 F. Supp. 2d 531, 539 (N.D. Tex.2011).

11

*Rivera v. Colvin*, No. 3:14-cv-4328-BN, 2016 WL 687170, at *5 (N.D. Tex. Feb. 19, 2016).

Here, Plaintiff argues that the error is not harmless because "there is no evidence that the ALJ accounted for interruptions in work activity caused by tension headaches or migraine headaches; or interruptions in concentration, persistence, or pace caused by depression or the side effects of medication; or mechanical restrictions caused by limited cervical range of mobility; or inability to maintain her head in a certain position for extended periods of time" after step two in the Sequential Analysis. Dkt. No. 15 at 3-4. "[A]ccording to Plaintiff, the failure to apply the proper *Stone* standard was not harmless because the ALJ did not consider these impairments in Step 4 or Step 5 and possibly found them non-severe based upon the incorrect standard for severity." *Marston*, 2017 WL 3328122, at *4.

Here, the ALJ found that Plaintiff's major depressive disorder was "not severe" because "it did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." Tr. at 15. This finding was based on the ALJ's determination that "the consultive examination did not reveal any significant mental health symptoms (i.e. memory loss, limited concentration, etc.) that would affect her ability to work." *Id.* And, he reasoned, "the record is significant for indications that the claimant may be complaining of greater mental impairment than she actually experiences." *Id.*

As to the migraines, the ALJ found these to be "non-medically-determinable impairments," because "the record evidences no treatment for this impairment, nor is

12

there definitive diagnosis of the same attributable to an acceptable medical source. Still further, a computerized tomography (CT) of the claimant's brain was normal." *Id.* at 17.

While the ALJ stated that he considered and weighed evidence on the claimant's mental function from Dr. Connie Deutsch, Dr. Janie Ritch, Dr. Laura Cooper, and the series of GAF scores, *see id.* at 21, the ALJ did not consider the functional limitation of the impairments of tension headaches or migraine headaches, mechanical restrictions caused by limited cervical range of mobility, or the inability to maintain her head in a certain position for extended periods of time, *see* Dkt. No. 15 at 3-4.

The Commissioner argues that, "when the ALJ finds 'medically determinable mental impairments' that were not severe, then the ALJ was not required to consider the nonexertional impact of these ... throughout the disability determination process." Dkt. No. 14 at 6.

The undersigned disagrees. "The Fifth Circuit has explained that, 'throughout the disability determination process,' the ALJ is required to consider the combined effect of any impairments 'without regard to whether any such impairment, if considered separately, would be of sufficient severity.'" *Gonzales v. Berryhill*, No. 3:16-cv-1830-BN, 2017 WL 3492215, at *6-*7 (N.D. Tex. Aug. 15, 2017) ( quoting *Loza*, 219 F.3d at 393; 20 C.F.R. § 404.1523).

Here, the ALJ's RFC determination could have arguably been different had he considered the limitations that Plaintiff faced due to her headaches, mechanical restrictions caused by limited cervical range of mobility, and in the ability to maintain

13

her head in a certain position. This, in turn, could "have affected the jobs available at step five of the sequential evaluation process, and [Plaintiff] may have been found disabled." *Kneeland v. Berryhill*, 850 F.3d 749, 762 (5th Cir. 2017).

For theses reasons, Plaintiff's claims should be remanded for proper adjudication.

## Recommendation

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.[1]

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

---

[1] By recommending a remand for further administrative proceedings, the undersigned does not suggest that Plaintiff is or should be found disabled.

14

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 26, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

15